UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
ANTONIA MARIE HERRERA,
    Debtor.                      No. 7-05-15578 SA

ANTONIA MARIE HERRERA,
VALERIE NIETO,
MARY LUCERO,
    Plaintiffs,
v.                           Adv. No. 11-1011 S

YVETTE J. GONZALES,
YVETTE GONZALES, Trustee of
Antonia Marie Herrera Bankruptcy
Estate and YVETTE J. GONZALES, LLC,
    Defendants.

## MEMORANDUM OPINION AND ORDER
## REQUIRING BARTON MOTION TO BE FILED
## AND PERMITTING AMENDMENT OF COMPLAINT

Plaintiffs' complaint seeks to hold the chapter 7 case trustee ("Trustee") personally liable for damages for an alleged loss of proceeds from a class action. Adversary Proceeding ("AP") doc 1.[1] Trustee has moved to dismiss ("Motion") (AP doc 4), which Plaintiffs oppose (AP doc 7). The Court finds the Motion well taken and will dismiss, subject to Plaintiffs having the opportunity to amend the complaint and attach it to a motion seeking permission to pursue the claims against the Trustee.[2]

---

[1] Because most of the record references are to docket entries in the underlying chapter 7 case, the Court uses "doc _" to refer to docket entries in the chapter 7 case and "AP doc _" to refer to docket entries in this adversary proceeding.

[2] The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (O); and these are findings of fact and conclusions of law as may be required by
(continued...)

**Background**

Plaintiffs are the daughters of Debtor Antonia Herrera. Debtor died December 1, 2009, and Plaintiffs are Debtor's only heirs.

On July 8, 2005, Debtor filed a chapter 7 bankruptcy petition. Doc 1. Neither the schedules nor the Statement of Financial Affairs made any mention of a class action pending in the state of Alabama against Family Dollar Stores, Inc. from which Debtor was allegedly entitled to share in a recovery. Doc 1. Trustee issued a No Distribution Report (doc 7) and the case was closed on October 31, 2005. Doc 9. On April 6, 2006, Trustee moved to reopen the case, asserting that a creditor informed Trustee that Debtor had a claim for back wages from the Family Dollar Store class action. Doc 10. Apparently it was discovered by some party involved in the Alabama action, after judgment, that certain class members had filed bankruptcy petitions but had not disclosed the bankruptcy filings to the Alabama court. The Court entered the order reopening the case the next day. Doc 11. Trustee then promptly withdrew the No Distribution Report (doc 12), issued a notice of assets (doc 13) and obtained a claims filing deadline of July 13, 2007 (doc 14). She also hired her own law firm to assist in the prosecution of a

---

[2](...continued)
Rule 7052 F.R.B.P.

Case 11-01011-s    Doc 11    Filed 04/16/12    Entered 04/16/12 13:20:21 Page 2 of 28

lawsuit against Family Dollar Stores, Inc., and to hire and oversee special counsel (motion - doc 16; order - doc 17). And she obtained the employment of other law firms as special counsel to assist the Trustee in the recovery of damages. (Motion - doc 21; order - doc 24). In the meantime, presumably pursuant to the notice of possible dividend, three proofs of claim were timely filed in the total amount of $14,141.29.[3]

Exactly what happened after that is a bit murky, and those events are of course at the heart of the complaint. What is clear from an examination of this Court's docket is that the Trustee filed an interim report on September 28, 2006 (doc 26) and another interim report on September 27, 2007 (doc 27). Six days later on October 3, 2007 the Trustee filed a text entry of No Distribution and Abandonment of Assets. The next day, October 4, a final decree was entered and the case reclosed. Doc 28. Approximately 26 months later Debtor died, apparently having taken no action while she was still alive to realize any distribution from the Alabama action.

---

[3]    Plaintiffs mistakenly assert that no proofs of claim were filed. AP Doc 1, at paragraph 27. The three claims filed were from GMAC in the amount of $5,318.18, Hyundai Motor Finance Company in the amount of $6,183.96, and New Mexico Educators Federal Credit Union in the amount of $2,639.15. All the claims were filed as unsecured. Debtor listed a total of 16,214 of Schedule F claims, the bulk of them being the three represented by proofs of claim. No claims were listed in Schedules D and E.

Case 11-01011-s    Doc 11    Filed 04/16/12    Entered 04/16/12 13:20:21 Page 3 of 28

A little over a year after Debtor's death, and over three years after the chapter 7 case had been reclosed, Plaintiffs filed this adversary proceeding. Trustee promptly filed her Motion to Dismiss (doc 3), to which Plaintiffs filed their Plaintiffs' Response to Motion to Dismiss (doc 7), to which Trustee filed her Reply on Motion to Dismiss (doc 8).

**Claims**

Plaintiffs make three claims in the complaint: that Trustee's law firm (Yvette Gonzales, LLC) committed malpractice (Count I), that the Trustee owed a fiduciary duty to Plaintiffs and breached it by failing to adequately monitor the attorneys the estate had hired (Count II), and that the estate's attorneys and the Trustee made misrepresentations to the Trustee [sic] (Count III). Based on those claims, Plaintiffs ask for compensatory, treble and punitive damages.[4] For the reasons set forth below, the Court rules that the complaint in its present state fails to state a claim for which relief can be granted.

**Analysis**[5]

Standing

---

[4] The complaint also asks for punitive damages and an award of attorney fees against "Insurer". AP Doc 1, at paragraph 56 and decretal paragraph D. The Court takes these references as typographical errors.

[5] In analyzing the complaint, the Court has adopted the terminology that Plaintiffs used.

Trustee challenges Plaintiffs' standing to bring this action against her. The Court must address standing to the extent the issue arises at any point. <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975) (the existence of a case or controversy is the threshold question in every federal case).

In <u>Board of County Commissioners of Sweetwater County v. Geringer</u>, 297 F.3d 1108, 1111-12 (10th Cir. 2002), the Court of Appeals for the Tenth Circuit described the requirements of standing in considerable detail:

> "The standing inquiry requires us to consider 'both constitutional limits on federal-court jurisdiction and prudential limitations on its exercise.' " <u>Sac & Fox Nation of Mo. v. Pierce</u>, 213 F.3d 566, 573 (10th Cir.2000) (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Constitutional standing derives from Article III of the U.S. Constitution, which restricts federal courts' jurisdiction to suits involving an actual case or controversy. <u>Schaffer v. Clinton</u>, 240 F.3d 878, 882 (10th Cir.2001) (citing <u>Allen v. Wright</u>, 468 U.S. 737, 750, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). To satisfy constitutional standing requirements, a plaintiff must demonstrate the presence of three elements:
>> (1) "injury in fact"-meaning "the invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal relationship between the injury and the challenged conduct"-meaning that the "injury fairly can be traced to the challenged action of the defendant"; and (3) "a likelihood that the injury will be redressed by a favorable decision"-meaning that the "prospect of obtaining relief from ... a favorable ruling is not too speculative."
> <u>Buchwald [v. University of New Mexico School of Medicine]</u>, 159 F.3d [487] at 493 (10th Cir. 1998) (quoting <u>Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville</u>, 508

Case 11-01011-s    Doc 11    Filed 04/16/12    Entered 04/16/12 13:20:21 Page 5 of 28

U.S. 656, 663-64, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993)); see also Bennett v. Spear, 520 U.S. 154, 163, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) ("To satisfy the 'case' or 'controversy' requirement of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision.") (quoting, inter alia, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). At its core, we have explained, constitutional standing requires a court "to ask not only whether an injury has occurred, but whether the injury that has occurred may serve as the basis for a legal remedy in the federal courts." Schaffer, 240 F.3d at 883.

In addition to satisfying the prerequisites for constitutional standing, a plaintiff must also meet, generally speaking, the requirements of prudential standing, a judicially-created set of principles that, like constitutional standing, places "limits on the class of persons who may invoke the courts' decisional and remedial powers." Warth, 422 U.S. at 499, 95 S.Ct. 2197; see also Allen, 468 U.S. at 751, 104 S.Ct. 3315 (describing prudential standing as "judicially self-imposed limits on the exercise of federal jurisdiction"). Under a prudential standing inquiry, a party that has satisfied the requirements of constitutional standing may nonetheless be barred from invoking a federal court's jurisdiction. Bennett, 520 U.S. at 163, 117 S.Ct. 1154; Warth, 422 U.S. at 499, 95 S.Ct. 2197. Like its constitutional counterpart, prudential standing establishes three conditions a party must overcome before invoking federal court jurisdiction. First, a plaintiff must assert his "own rights, rather than those belonging to third parties." Sac & Fox Nation, 213 F.3d at 573; see also Warth, 422 U.S. at 499, 95 S.Ct. 2197 (explaining that a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties"). Second, the plaintiff's claim must not be "a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens." Warth, 422 U.S. at 499, 95 S.Ct. 2197; see also Allen, 468 U.S. at 751, 104 S.Ct. 3315 (explaining that generalized grievances should normally be directed to the legislative, as opposed to judicial, branches of government). Third, prudential standing requires that

> "a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit." Bennett, 520 U.S. at 163, 117 S.Ct. 1154.

When ruling on a motion to dismiss for want of standing, the Court must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party. Warth, 422 U.S. at 501.

Taking as true the factual allegations of the complaint and construing them most favorably to Plaintiffs, the Court nevertheless finds that Plaintiffs have not alleged sufficient facts to bestow standing upon themselves with respect to any of the counts of the complaint. Count I does not allege malpractice on the part of the Trustee. Rather, it alleges that the law firm, Yvette Gonzales, LLC, malpracticed. Count III is in part similar to Count I in that it charges counsel for the estate with violations of the New Mexico Unfair Practices Act ("UPA"). Plaintiffs are thus alleging that they have standing to sue professionals that have been hired by the Trustee and are supposed to report to her.

Only the Trustee, as the representative of the estate, has the authority to bring an action against the professionals that are supposed to report to her. 11 U.S.C. § 323. Creditors of the estate (if such these be), who have only suffered a general injury common to all creditors and derivative of injury to the

Case 11-01011-s    Doc 11    Filed 04/16/12    Entered 04/16/12 13:20:21 Page 7 of 28

estate, have no such standing. See Geringer, 297 F.3d at 1111-12 (citing Warth, 422 U.S. at 499); Stoll v. Quintanar (In re Stoll), 252 B.R. 492, 495 (9th Cir. BAP 2000). That is because the claim for the alleged malpractice is a claim against the estate, and it is the trustee, not any random creditor, that has the sole authority to sue on behalf of the estate as its representative. 11 U.S.C. § 323.

Count II alleges that the Trustee as such breached a fiduciary duty that she owed the estate. The alleged breach is that she failed to (adequately) monitor the counsel that she had hired for the estate. Count III alleges that, in addition to her law firm, the Trustee violated the New Mexico Unfair Practices Act. While these allegations might well provide the basis for standing for a creditor, they do not do so for (the heirs of) a debtor. Ordinarily a debtor has no standing to argue about the size of the estate because the debtor has no pecuniary interest in the estate which could be injured by the actions of a trustee. Stoll, id. at n.4, citing in re Thompson, 965 F.2d 1136, 1144 (1st Cir. 1992).

> First of all, it is necessary to differentiate between the "person aggrieved" standard for standing which is applicable to bankruptcy appeals and the constitutional case or controversy standing by which this Court must measure its authority to adjudicate a matter. "The 'person aggrieved' test is meant to be a limitation on appellate standing in order to avoid 'endless appeals brought by a myriad of parties who are indirectly affected by every bankruptcy court order.' " Lopez v. Behles ( In re American Ready Mix, Inc.), 14

F.3d 1497, 1500 (10th Cir.1994) (quoting <u>Holmes v.</u>
<u>Silver Wings Aviation, Inc.,</u> 881 F.2d 939, 940 (10th
Cir. 1989)).

    Under the "person aggrieved" standard, only those
parties whose "rights or interests are directly and
adversely affected pecuniarily by the decree or order
of the bankruptcy court" are permitted to prosecute an
appeal of that order. <u>Holmes</u>, 881 F.2d at 940. Thus,
the "person aggrieved" test, which focuses on whether
or not the appellant has been financially affected by a
bankruptcy court order, is a prudential doctrine meant
to limit bankruptcy appeals and sets a somewhat higher
standard than the Article III cases or controversies
standard that serves as a constitutional limitation on
federal jurisdiction in the first instance. <u>Nintendo</u>
<u>Co., Ltd. v. Patten ( In re Alpex Computer Corp.),</u> 71
F.3d 353, 357 n. 6 (10th Cir. 1995).

<u>Ebel v. King (In re Ebel)</u>, 338 B.R. 862, 868 (Bankr. D. Colo.

2005) (debtor had no pecuniary interest in estate subject to

injury and therefore no standing to contest trustee's actions

taken on behalf of estate).

    Nothing in the complaint states what collection might be had

from the Family Dollar litigation, nor what distributions Trustee

might have to make for administrative claims and general

unsecured claims, in the process of determining what if anything

might have been left over for Debtor.[6]  Even construing the

---

[6] Debtor's amended schedule B lists the claim in the amount
of $66,532, of which Debtor claimed, in amended Schedule C, a
total of $8,379 exempt.  Doc 23.  These figures are not recited
in the complaint, so that it is not clear if Plaintiffs adopt
this number, or are even aware of it.  Were Trustee to have
received funds excess of what was needed to pay all the
administrative claims (all the allowed professional fees plus the
allowed trustee fees), 11 U.S.C. §726(a)(1), plus the filed
unsecured claims (with interest), §726(a)(5), she would then
presumably file a notice of surplus to give unpaid creditors  the
                                           (continued...)

complaint most favorably for Plaintiffs, there is no suggestion
in the complaint of any standing to pursue the relief they want.
Thus, the complaint must be dismissed on the grounds of standing,
but the Court will allow Plaintiffs to file an amended complaint
to particularize the facts to state the basis for their standing.
See Warth, 422 U.S. at 501-02.

Failure to State a Claim

In 2007, the United States Supreme Court recast the standard
by which the sufficiency of complaints is judged.  In Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 562-63, the court stated
in part:

> We could go on, but there is no need to pile up further
> citations to show that Conley's "no set of facts"
> language has been questioned, criticized, and explained
> away long enough. To be fair to the Conley Court, the
> passage should be understood in light of the opinion's
> preceding summary of the complaint's concrete
> allegations, which the Court quite reasonably
> understood as amply stating a claim for relief.  But
> the passage so often quoted fails to mention this
> understanding on the part of the Court, and after
> puzzling the profession for 50 years, this famous
> observation has earned its retirement.  The phrase is
> best forgotten as an incomplete, negative gloss on an
> accepted pleading standard: once a claim has been
> stated adequately, it may be supported by showing any
> set of facts consistent with the allegations in the
> complaint.  See Sanjuan [v. American Bd. of Psychiatry
> and Neurology, Inc.], 40 F.3d [247], at 251 [(7th Cir.
> 1994)] (once a claim for relief has been stated, a
> plaintiff "receives the benefit of imagination, so long

---

    6(...continued)
chance to be paid (including interest).  §726(a)(3).  These
payments would all be made before any distribution to Debtor
(other, of course, than her exemptions).

> as the hypotheses are consistent with the complaint");
> accord, Swierkiewicz [v. Sorema N.A.], 534 U.S. [506],
> at 514, 122 S.Ct. 992 [(2002)]; National Organization
> for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114
> S.Ct. 798, 127 L.Ed.2d 99 (1994); H.J. Inc. v.
> Northwestern Bell Telephone Co., 492 U.S. 229, 249-250,
> 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); Hishon v. King
> & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d
> 59 (1984). Conley, then, described the breadth of
> opportunity to prove what an adequate complaint claims,
> not the minimum standard of adequate pleading to govern
> a complaint's survival.

Under the new standard of Twombly a plaintiff's claim must be

"plausible on its face" in order to survive a motion to dismiss.

Twombly, 550 U.S. at 570 ("[W]e do not require heightened fact

pleading of specifics, but only enough facts to state a claim to

relief that is plausible on its face.") "The concept of

'plausibility' at the dismissal stage refers not to whether the

allegations are likely to be true; the court must assume them to

be true. The question is whether, if the allegations are true,

it is plausible and not merely possible that the plaintiff is

entitled to relief under the relevant law." Christy Sports, LLC

v. Deer Valley Resort Co., Ltd., 555 F.3d 1188, 1191-92 (10th

Cir. 2009) (citing Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th

Cir. 2008)).

The Supreme Court elucidated the Twombley standards in

Ashcroft v. Iqbal, 556 U.S. 662 (2009), in which it analyzed

Twombley to require that a well pleaded complaint allege activity

which nudges the claims from conceivable to plausible and which

Case 11-01011-s   Doc 11   Filed 04/16/12   Entered 04/16/12 13:20:21 Page 11 of 28

is not more consistent with lawful behavior rather than unlawful

or otherwise improper behavior.

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as true, to
> "state a claim to relief that is plausible on its
> face." [Twombley], at 570, 127 S.Ct. 1955. A claim has
> facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable
> inference that the defendant is liable for the
> misconduct alleged. Id., at 556, 127 S.Ct. 1955. The
> plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.
> Ibid. Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops
> short of the line between possibility and plausibility
> of 'entitlement to relief.' " Id., at 557, 127 S.Ct.
> 1955 (brackets omitted).
> ...
> Our decision in Twombly illustrates the
> two-pronged approach. There, we considered the
> sufficiency of a complaint alleging that incumbent
> telecommunications providers had entered an agreement
> not to compete and to forestall competitive entry, in
> violation of the Sherman Act, 15 U.S.C. § 1.
> Recognizing that § 1 enjoins only anticompetitive
> conduct "effected by a contract, combination, or
> conspiracy," Copperweld Corp. v. Independence Tube
> Corp., 467 U.S. 752, 775, 104 S.Ct. 2731, 81 L.Ed.2d
> 628 (1984), the plaintiffs in Twombly flatly pleaded
> that the defendants "ha[d] entered into a contract,
> combination or conspiracy to prevent competitive entry
> ... and ha[d] agreed not to compete with one another."
> 550 U.S., at 551, 127 S.Ct. 1955 (internal quotation
> marks omitted). The complaint also alleged that the
> defendants' "parallel course of conduct ... to prevent
> competition" and inflate prices was indicative of the
> unlawful agreement alleged. Ibid. (internal quotation
> marks omitted).
> The Court held the plaintiffs' complaint deficient
> under Rule 8. In doing so it first noted that the
> plaintiffs' assertion of an unlawful agreement was a "
> 'legal conclusion' " and, as such, was not entitled to
> the assumption of truth. Id., at 555, 127 S.Ct. 1955.
> Had the Court simply credited the allegation of a
> conspiracy, the plaintiffs would have stated a claim

for relief and been entitled to proceed perforce. The
Court next addressed the "nub" of the plaintiffs'
complaint—the well-pleaded, nonconclusory factual
allegation of parallel behavior—to determine whether it
gave rise to a "plausible suggestion of conspiracy."
Id., at 565–566, 127 S.Ct. 1955. Acknowledging that
parallel conduct was consistent with an unlawful
agreement, the Court nevertheless concluded that it did
not plausibly suggest an illicit accord because it was
not only compatible with, but indeed was more likely
explained by, lawful, unchoreographed free-market
behavior. Id., at 567, 127 S.Ct. 1955. Because the
well-pleaded fact of parallel conduct, accepted as
true, did not plausibly suggest an unlawful agreement,
the Court held the plaintiffs' complaint must be
dismissed. Id., at 570, 127 S.Ct. 1955.

Under Twombly 's construction of Rule 8, we
conclude that respondent's complaint has not "nudged
[his] claims" of invidious discrimination "across the
line from conceivable to plausible." Ibid.

Id. at 678–680.  Iqbal also states:

Determining whether a complaint states a plausible
claim for relief will, as the Court of Appeals
observed, be a context-specific task that requires the
reviewing court to draw on its judicial experience and
common sense. [Iqbal v. Hasty,] 490 F.3d [143], at
157–158 [(2nd Cir. 2007)].

Id. at 679.

Utilizing this Court's judicial experience and common sense

in this context-specific task results in scenarios in which

Trustee's actions are permissible, and perhaps even required.

The complaint says nothing about why the case was closed without

a distribution.  The obvious question presents itself of whether

the Trustee, having lined up counsel to help her collect from the

Family Dollar litigation, found that she was too late.  There is

nothing in the complaint which even says that the Trustee was not

Page 13 of  28

already time-barred from obtaining the funds when she reopened the case to investigate the newly disclosed asset.

Another obvious question is whether, in the exercise of her reasonable judgment, the Trustee determined that the amount to be collected from the Family Dollar litigation was simply too small to justify the outlay of time and expense to recover it.[7] That is, even assuming that the amount to be recovered was a gross figure of about $66,000 (a figure which, as already pointed out, does not appear in the complaint but in the amended schedules B and C), the Trustee would incur significant costs and disbursements before and after obtaining the funds:

- class action counsel at a 33 1/3% contingency rate, which would be taken out before the deduction for costs (doc 24) (approximately $22,000, without taking into account any costs);

- Yvette Gonzales, LLC at $175 per hour plus tax and costs (doc 17);

- the Trustee's fee provided for by 11 U.S.C. §326(a) (approximately $6,550);

- the cost for an accountant to file a tax return for the estate; and

---

[7] The following analysis goes significantly beyond construing the complaint most favorably to Plaintiffs; it is almost instead the equivalent of rewriting the complaint. Nevertheless, the Court has engaged in the analysis to explain fully to Plaintiffs how to take into account the bankruptcy process in deciding whether they have a claim, or a claim that is worth pursuing.

- the Debtor's exemption (claimed at $8,379).
Assuming ten hours of attorney time for the Trustee's firm
($1,750), not accounting for any costs or taxes from any firm,
nor any costs for an accountant to prepare tax returns (and
assuming no taxes due), the cost of obtaining the $66,532 would
be $38,679, for a net to the estate of $27,853, a figure which,
given the assumptions above, is almost demonstrably too
optimistic.[8]  Depending on what considerations were at play, it
is conceivable that the Trustee had a valid business reason for
not pursuing the recovery but instead closing the estate.[9]

     Further, it is important that Count II is framed in terms of
the Trustee's failure to monitor her counsel.  Parsing the
complaint as rigorously as did the court in Iqbal, one is
reasonably left wondering what exactly counsel did or did not do
that the Trustee failed to watch out for.  In any event, the

_____

     [8] To carry the analysis a step further, assuming that the
filed claims in the amount of $14,141.29 were paid, but without
taking into account interest or any tardily filed claims, the
remainder to be distributed to Debtor would have been
approximately $13,712.  Again, this number is overstated due to
the factors listed above that are not accounted for; it could
easily be a four digit figure, or less.  Whether in reality there
would have been any distribution to Debtor is thus a bit
questionable.

     [9] Of course, once the case was reclosed, this time with the
asset having been scheduled under §521(a)(1), the claim would
have been abandoned by the Trustee pursuant to §554(c), and thus
available in full to the Debtor to recover and keep, free and
clear of claims of prepetition creditors.  The parties have
chosen not to argue that issue at this stage of the proceedings.
E.g., Reply on Motion to Dismiss at 2, n.2 (doc 8).

Case 11-01011-s   Doc 11   Filed 04/16/12   Entered 04/16/12 13:20:21 Page 15 of 28

complaint fails to recite facts that plausibly support a claim against the Trustee for a failure of fiduciary duty by failing to monitor her counsel.[10]

Trustee's Immunity

The standard for the sort of liability for which a trustee may be held liable in her personal capacity in the Tenth Circuit is set out in Sherr v. Winkler, 552 F.2d 1367 (10th Cir. 1977). In that Act case, a Chapter X trustee obtained a turnover order for proceeds from certain oil and gas leases. The trustee, under some pressure to act expeditiously, failed, before obtaining the order, to check for others who might have an interest in the proceeds. Plaintiffs Sherr and Rubin did in fact have such an interest, and alleged that the trustee's action caused them to have to intervene in the reorganization case to protect their interests, causing them to unnecessarily incur significant attorney fees. The District Court dismissed the complaint, which ruling the Tenth Circuit affirmed, ruling in part as follows:

> Thus, a trustee in bankruptcy is not to [be] held
> personally liable unless he acts willfully and
> deliberately in violation of his fiduciary duties. A
> trustee in bankruptcy may be held liable in his
> official capacity and thus surcharged if he fails to
> exercise that degree of care required of an ordinarily
> prudent person serving in such capacity, taking into
> consideration the discretion allowed. The rule applies
> to the trustee's selection and supervision of his

---

[10] The sufficiency of the allegations in Count III against the Trustee in her personal capacity are addressed immediately below in the section on Trustee Immunity.

Case 11-01011-s   Doc 11   Filed 04/16/12   Entered 04/16/12 13:20:21 Page 16 of 28

agents and employees.  (Emphasis added; citations omitted.)

Id. at 1375.[11]  The complaint speaks repeatedly of "malpractice", "negligence" and "negligent actions", "fail[ure] to exercise ordinary care", etc.  However, paragraph 43 of Count II alleges that "Ms. Gonzales'[12] actions were committed knowingly, intentionally and maliciously, or in reckless disregard to Plaintiffs' rights."  And paragraph 46 of Count III, alleging New Mexico Unfair Practices Act violations against Yvette Gonzales, LLC, asserts that "Trustee's Law Firm and Ms. Gonzales knowingly made false or misleading statements or other representations in connection with the services and benefits contract for by Trustee and the Herrera Bankruptcy Estate."  Finally, paragraph 55, also part of Count III, states that "Trustee's Law Firm's and Ms. Gonzales' actions were committed knowing, intentionally and maliciously, or in reckless disregard to Ms. Herrera's rights and

_____

[11] The ruling was based on the court's interpretation of Mosser v. Darrow, 341 U.S. 267 (1951).  There are rather widely differing standards among the circuits concerning trustee's personal liability, see Louis M. Phillips and Ashley S. Green, Musings on the Standard of Care Governing the Question of Trustee Immunity and Trustee Liability, Part 2, at 12-19 (Nat'l Ass'n of Bankruptcy Trustees, NABTalk Winter 2008).  And the Ninth Circuit has specifically disagreed with the Sherr court's interpretation of Mosser v. Darrow, and thus with the standard applied by the court in Sherr v. Winkler.  Hall v. Perry (In re Cochise College Park), 703 F.2d 1339, 1357 n.26 (9th Cir. 1983).  Of course, the Tenth Circuit decision and standard of liability is binding on this Court.

[12] "Ms. Gonzales" is defined in the complaint to mean the Trustee in her personal capacity.  Complaint at paragraph 3.

Case 11-01011-s   Doc 11   Filed 04/16/12   Entered 04/16/12 13:20:21 Page 17 of 28

well being."  The problem with the allegations is that while they use the talismanic words that get beyond the mere negligence (for which there is only a claim against the estate, at least in the Tenth Circuit), the allegations are themselves bare legal conclusions that do not provide a sufficient factual predicate to sustain the complaint under the standards enunciated in <u>Twombley</u> and <u>Iqbal</u>.  There is no explicit recitation of actions that on their face would have constituted knowing, intentional, malicious or reckless harm to Debtor.  Thus as a complaint against the Trustee individually, it fails and must be dismissed.

<u>Permission to sue a trustee</u>

In <u>Barton v. Barbour</u>, 104 U.S. 126 (1881), the United States Supreme Court ruled that a person allegedly injured by the negligence of a (state court)[13] receiver operating a railroad must obtain the permission of the court that had appointed the receiver before pursuing an action against the receiver.  <u>Id.</u> at 136-37.  Mr. Justice Miller dissented and in effect won the day, when six years later Congress passed legislation which was the predecessor to 28 U.S.C. §959(a).[14]  Collier on Bankruptcy ¶

---

[13] "Barton involved a receiver in state court, but the circuit courts have extended the Barton doctrine to lawsuits against a bankruptcy trustee."  <u>Carter v. Rodgers</u>, 220 F.3d 1249, 1252 (11th Cir. 2000).

[14] The opening lines of Mr. Justice Miller's dissent seem as apropos as ever today:

(continued...)

Page 18 of  28

10.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012).

Section 959(a) reads as follows:

> (a) Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

The language of the statute embraces virtually all the issues that were argued in <u>Barton</u>. Since that case was decided and the statute passed, an important distinction has been recognized in at least some of the case law: it is one thing to without leave of the appointing court sue the trustee who is operating a business; it is quite another to sue the trustee without leave who is merely performing her duties in administering the estate, including perhaps gathering the assets of the estate. Collier on Bankruptcy, ¶ 10.01. For example, in <u>Muratore v. Darr</u>, 375 F.3d 140, 145 (1st Cir. 2004), the chapter 11 trustee was sued in the United States District Court for negligence, breach of fiduciary duty, and other claims arising

---

[14](...continued)
The rapid absorption of the business of the country of every character by corporations, while productive of much good to the public, is beginning also to develop many evils, not the least of which arises from their failure to pay debts and perform the duties which by the terms of their organization they assumed. <u>Id.</u> at 137.

out of his administration of the case, after the case was closed. The First Circuit cited numerous cases which compelled the dismissal of the case, holding in part that

> actions taken in the mere continuous administration of property under order of the court do not constitute an "act" or "transaction" in carrying on business connected with the estate. Field v. Kansas City Refining Co., 9 F.2d 213, 216 (8th Cir. 1925); see also [Allard v. Weitzman] In re DeLorean Motor Co., 991 F.2d [1236] at 1241 [6th Cir. 1993] (action against trustee and representatives alleging abuse of process and malicious prosecution in relation to prosecution of fraudulent conveyance action is a suit for actions of trustee wholly unrelated to carrying on debtor's business because trustee merely collected, took steps to preserve, and/or held assets, as well as performed other aspects of administering and liquidating estate); Carter [v. Rodgers], 220 F.3d [1249] at 1254 [(11th Cir. 2000)].

Id. at 144-45. See also Springer v. The Infinity Group Co., 189 F.3d 478 (10th Cir. 1999) (dismissal of action brought in the Northern District of Oklahoma against trustee appointed by the District Court for the Eastern District of Pennsylvania in an SEC action, citing with approval DeLorean Motor Co.).[15]  In contrast, § 959 "is intended to 'permit actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store.' "

---

[15] DeLorean also extended the Barton doctrine to trustee's counsel as the functional equivalent of the trustee.  991 F.2d at 1240.

Carter, 220 F.3d at 1254 (quoting Lebovits v. Scheffel (In re Lehal Realty Assocs.), 101 F.3d 272, 276 (2d Cir.1996)).

There is no disagreement that Plaintiffs failed to obtain this Court's permission to initiate the state court action against the Trustee. There is no doubt that the Trustee was not operating a business in the course of administering this simple chapter 7 case. Thus dismissal is required unless the happenstance of this state court case having been removed to, and now pending in this Court as, an adversary proceeding compels a different result. It does not.

In Heavrin v. Schilling (In re Triple S Restaurants, Inc.),342 B.R. 508 (Bankr. W.D. Ken. 2006), aff'd Heavrin v. Schilling (In re Triple S Restaurants, Inc.), 519 F.3d 575 (6th Cir. 2008), plaintiff filed an action for intentional infliction of emotion distress against the trustee for threatening to report him to the United States Attorney's office in connection with life insurance proceeds that the trustee asserted belonged to the estate. The action was filed in state court and removed to the bankruptcy court.[16] The bankruptcy court granted the trustee's motion to dismiss on Barton grounds, holding that "the appointing

---

[16] The Court uses the phrase "removed to the bankruptcy court" as shorthand for the process which requires removal of an action to the United States District Court pursuant to 28 U.S.C. §1452(a) and then an automatic referral of the action to the United States Bankruptcy Court pursuant to the district's standing order of referral and 28 U.S.C. §157(a).

court has a strong interest in protecting the trustee from unjustified personal liability for act taken within the scope of his official duties (citing In re Lehal Realty Assocs.).  Id. at 512.  In a similar vein, Judge Posner has stated in relevant part as follows:

> Just like an equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code. If he is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded.
> This concern is most acute when suit is brought against the trustee while the bankruptcy proceeding is still going on. The threat of his being distracted or intimidated is then very great, and some of the cases we have cited stress this. In this case, the suit and the motion for leave to file it came after the bankruptcy had been wound up. We cannot find any federal appellate court rulings on whether leave is required in such a case. But we think that it is. Without the requirement, trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive (and the expense of bankruptcy is already a source of considerable concern). Furthermore, requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively. It does this by compelling suits growing out of that work to be as it were prefiled before the bankruptcy judge that made the appointment; this helps the judge decide whether to approve this trustee in a subsequent case.
> Yet these reasons alone might not be sufficient to warrant the extension (if that is how it should be regarded) of the leave-to-file requirement to suits filed after the winding up of the bankruptcy. For we are mindful of the Supreme Court's refusal in Ferri v. Ackerman, 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979), to grant appointed counsel in federal criminal

Case 11-01011-s   Doc 11   Filed 04/16/12   Entered 04/16/12 13:20:21 Page 22 of 28

cases immunity from malpractice suits by their clients, in the face of arguments similar to those in the preceding paragraph. See id. at 204-05, 100 S.Ct. at 409-10. At stake in the present case, however, is a concern that has no counterpart in Ferri, concern with the integrity of the bankruptcy jurisdiction. If debtors, creditors, defendants in adversary proceedings, and other parties to a bankruptcy proceeding could sue the trustee in state court for damages arising out of the conduct of the proceeding, that court would have the practical power to turn bankruptcy losers into bankruptcy winners, and vice versa. A creditor who had gotten nothing in the bankruptcy proceeding might sue the trustee for negligence in failing to maximize the assets available to creditors, or to the particular creditor. A debtor who had failed to obtain a discharge might through a suit against the trustee obtain the funds necessary to pay the debt that had not been discharged.

 Of course principles of res judicata and the good faith of state courts would head off the worst consequences of the kind of divided jurisdiction over bankruptcy matters that we have just described. But a simpler and more secure protection is to require the person wanting to bring a suit in state court against a trustee in bankruptcy to obtain leave to do so from the bankruptcy court.

Matter of Linton, 136 F.3d 544, 545-46 (7th Cir. 1998) (state court action filed against trustee after chapter 7 bankruptcy case closed; plaintiffs then filed a motion in the bankruptcy court to be allowed to continue the state court action; motion denied).[17]

In both Heavrin and Linton, the bankruptcy courts arguably could have declined to apply Barton but did not. On the other hand, in Harris v. Wittman (In re Harris), 590 F.3d 730 (9th Cir.

---

[17] The Court is not citing Judge Posner's decision for the use of the Barton doctrine as a device for vetting trustees for future assignments.

Case 11-01011-s   Doc 11   Filed 04/16/12   Entered 04/16/12 13:20:21 Page 23 of 28

2009), the Ninth Circuit took the opposite approach. While it affirmed the dismissal of the state court action that had been removed to the bankruptcy court based on the trustee's quasi-judicial immunity, id. at 742-44, it ruled that the mere act of removing the action to the bankruptcy court eliminated the Barton issue:

> Here, it is undisputed that Harris did not seek leave of the appointing court before filing his claim in state court. As a result, when the case was removed to bankruptcy court, the bankruptcy court held that, under the Barton doctrine, even as the appointing court, it did not have subject matter jurisdiction to hear Harris's claim, and so dismissed the suit.
> This was error, however, because, absent leave of the appointing court, the Barton doctrine denies subject matter jurisdiction to all forums except the appointing court. The Barton doctrine is a practical tool to ensure that all lawsuits that could affect the administration of the bankruptcy estate proceed either in the bankruptcy court, or with the knowledge and approval of the bankruptcy court. The Barton doctrine is not a tool to punish the unwary by denying any forum to hear a claim when leave of the bankruptcy court is not sought. When Harris's case was removed to the appointing bankruptcy court, all problems under the Barton doctrine vanished. Therefore, the district court erred in affirming the bankruptcy court's dismissal of Harris's suit for lack of subject matter jurisdiction under the Barton doctrine.

Id. at 742.

Without in any way disparaging the utility of an "it's here now, let's just deal with it" approach, the fact is that there are many doctrines that have the effect of punishing the unwary, such as filing requirements, statutes of limitations and repose, etc. Despite how inefficiently and even unfairly those policies

Case 11-01011-s   Doc 11   Filed 04/16/12   Entered 04/16/12 13:20:21 Page 24 of 28

seem to work sometimes, they continue to be enforced because they implement major policies deemed to be of overriding importance. So here trustees should not face personal liability – both the cost of defense and the possibility of a judgment – unless the action has been filed in the first instance in the bankruptcy court or there has been a determination by the bankruptcy court that the action can be initiated elsewhere.

All problems under the Barton doctrine do not vanish when the unauthorized non-bankruptcy court action is removed to bankruptcy court.  The trustee should not have to expend resources to remove the action to begin with.  Nor should the trustee have to file a motion to dismiss in the non-bankruptcy forum, educating that court about the <u>Barton</u> doctrine and hoping for the correct result.[18]  And what if she is not properly served

---

[18] Should the non-bankruptcy court deny the <u>Barton</u> motion to dismiss, presumably the Rooker-Feldman doctrine would dictate that an appeal would lie to the appellate court in that system. The Rooker-Feldman doctrine [<u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 414-416 (1923) and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 482(1983)] ordinarily prevents a federal court from acting as an appellate court to review a state court decision.  However, the importance of the issues concerning administration of bankruptcy estates are of such significance that a bankruptcy court might be tempted to ignore Rooker-Feldman.  <u>Cf., e.g.</u>, <u>Chao v. Hospital Staffing Services, Inc.</u>, 270 F3d 374, 384 (6th Cir. 2001) ("If the non-bankruptcy court's initial jurisdictional determination [concerning the applicability of the automatic stay] is erroneous, the parties run the risk that the entire action later will be declared void <u>ab initio</u>. (Citation omitted.)  If a state court and the bankruptcy court reach differing conclusions as to whether the automatic stay bars maintenance of a suit in the non-bankruptcy
(continued...)

but the action proceeds anyway, resulting in liability to her
which may be overturned later but is still in effect for some
period of time.  What happens if the trustee is unable to remove
the action timely?  Only by requiring any potential plaintiff to
always start in the bankruptcy court, either by filing a <u>Barton</u>
motion or filing the action itself in the bankruptcy court, can
the process, and trustees, most consistently be protected.[19]

   This Court concurs strongly with those courts that view the
bankruptcy process as fraught with debtor and creditor
unhappiness and that also consider competent trustees to be
critical to the functioning of a process often viewed critically
by the public.  For that reason, the Court will require
Plaintiffs to file a motion seeking leave to proceed, in this
Court or any other, attaching thereto a copy of the proposed
amended complaint.  <u>See</u> <u>Kashani v. Fulton (In re Kashani)</u>, 190
B.R. 875, 885-86 (9th Cir. BAP 1995).  This procedure seems
justified by the fact that the decision on the <u>Barton</u> motion will
depend in good part on the allegations of the amended complaint.

---

   [18](...continued)
forum, the bankruptcy forum's resolution has been held
determinative, presumably pursuant to the Supremacy Clause.").

   [19] If the bankruptcy case has already been closed, requiring
the filing of a <u>Barton</u> motion presumably will require the
reopening of the case pursuant to § 350.  That is a small burden
to impose on a plaintiff that seeks to pursue relief that could
have a major impact on the trustee and perhaps the court.
Indeed, the motion to reopen might itself be what triggers the
<u>Barton</u> inquiry.

If the amended complaint survives scrutiny – that is, if the Court would have allowed it to have been filed in state court, then the adversary proceeding will continue with subsequent pleadings, an initial pretrial conference, discovery, perhaps another motion to dismiss, etc.

**Conclusion**

Given the analysis set out above, the Court finds that it need not decide whether Plaintiffs have stated a cause of action against the Trustee under the New Mexico Unfair Practices Act at this time.  However, the Court has determined that under the Barton doctrine Plaintiffs will have to file a motion for permission to proceed against the Trustee, and attach to that motion an amended complaint.

**ORDER**

**IT IS THEREFORE ORDERED** that Plaintiffs may file an amended complaint.

**IT IS FURTHER ORDERED** that as a condition to filing an amended complaint, Plaintiffs must file a motion (and attach a copy of the amended complaint to the motion) seeking permission of this Court to sue the Trustee (and her law firm) in her personal capacity.

**IT IS FURTHER ORDERED** that the motion shall be filed no later than May 16, 2012, unless the parties agree to a different date.  Should the motion with the attached amended complaint not

Case 11-01011-s   Doc 11   Filed 04/16/12   Entered 04/16/12 13:20:21 Page 27 of 28

be filed timely, the Trustee shall submit a form of order to the Court dismissing the complaint without leave to amend.

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  April 16, 2012

Copies to:

Ryan T. Sanders
Allen Shepherd Lewis Syra & Chapman, PA
4801 Lang Ave NE #200
87109-4475
PO Box 94750
Albuquerque, NM 87199-4750

Charles R. Hughson
Rodey, Dickason, Sloan, Akin & Robb, P.A
P.O. Box 1888
Albuquerque, NM 87103-1888

Case 11-01011-s    Doc 11    Filed 04/16/12    Entered 04/16/12 13:20:21 Page 28 of 28